IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United Tank Services, Inc., | ) | C/A No. 2:19-cv-3069-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION & ORDER** |
| United Industries Group, Inc., Whiting-Turner Contracting Company, and Maguro Enterprises, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on Defendant Maguro Enterprises, LLC's ("Maguro") motion to dismiss the lien enforcement cause of action pursuant to Rule 12(b)(6), FRCP. After a thorough review of the relevant case law and statutory scheme, the court denies the motion.

**BACKGROUND**

This action arises out of the alleged failure to pay a subcontractor for work performed at the Google data center located in Moncks Corner, South Carolina. [ECF No. 1, Compl. at ¶ 1.][1] Maguro is the owner of the real property on which the Google data center is located. *Id.* at ¶ 8. At some time prior to January 22, 2019, Maguro hired Defendant Whiting-Turner Contracting Company ("Whiting-Turner") to serve as the general contractor on a construction project known

---

[1] Because the motion before this court is for dismissal pursuant to Rule 12(b)(6), the well-pleaded facts alleged in the Complaint must be taken as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). Accordingly, the majority of the facts outlined in the "Background" portion of this order are those taken from the Complaint. The court also takes judicial notice of the existence of the bond, as it is a public record, and considers the same in reaching its decision. *See* Fed. R. Evid. 201; *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

1

as Project Vandelay.  *Id.* at ¶ 9.  Whiting-Turner hired Defendant United Industries Group, Inc. ("UIG") as the tank erection subcontractor.  *Id.*  UIG hired Plaintiff United Tank Services, Inc. ("UTS") to perform tank installation work.  *Id.*

UTS claims that it performed certain work on Project Vandelay, but UIG failed and refused to pay certain corresponding invoices.  *See id.* at ¶¶ 11–23.  Consequently, on May 29, 2019, UTS served a Notice of Furnishing on Whiting-Turner, UIG, and Maguro in accordance with S.C. Code Ann. § 29-5-40, claiming $303,265.78 was due and owing.[2]  *Id.* at ¶ 24.  On July 23, 2019, UTS recorded its Notice and Certificate of Mechanics' Lien with the Berkeley County Register of Deeds and served the same on Whiting-Turner, UIG, and Maguro.  *Id.* at ¶ 25.  On October 29, 2019, UTS filed this action against Whiting-Turner, UIG, and Maguro.  UTS asserts a breach of contract claim against UIG and, alternatively, a quantum meruit claim against UIG, Whiting-Turner, and Maguro.  *Id.* at ¶¶ 27–43.  And, as is relevant to the current motion before this court, UTS asserts a claim for "Enforcement of Lien on Real Property" against the real property, naming Maguro as the property owner.  *Id.* at ¶¶ 44–50.

After UTS filed its mechanics' lien, but before UTS filed this lawsuit, UIG filed a bond with the Berkeley County Register of Deeds to discharge the mechanics' lien.  [ECF No. 14-1.]  On January 6, 2020, Maguro filed a motion to dismiss the claim to enforce the lien, relying on the

---

[2] S.C. Code Ann. § 29-5-40 provides: "Whenever work is done or material is furnished for the improvement of real estate upon the employment of a contractor or some other person than the owner and such laborer, mechanic, contractor or materialman shall in writing *notify the owner* of the furnishing of such labor or material and the amount or value thereof, the lien given by § 29-5-20 shall attach upon the real estate improved as against the true owner for the amount of the work done or material furnished.  But in no event shall the aggregate amount of liens set up hereby exceed the amount due by the owner on the contract price of the improvement made." (emphasis added).

2

existence of the bond which discharged the lien on the real property. [ECF No. 14.] The parties fully briefed the issues and this matter is ripe for this court's determination. [ECF Nos. 21, 24.]

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**DISCUSSION**

The procedures for both establishing and enforcing mechanics' liens are statutory. *See* S.C. Code Ann. § 29-5-10, *et seq.* If a party fails to strictly adhere to the statutory requirements, the lien may be dissolved. *See, e.g., Shelley Constr. Co. v. Sea Garden Homes, Inc.*, 336 S.E.2d 488, 490 (S.C. Ct. App. 1985) ("[M]echanic's liens are purely statutory and can only be acquired and enforced in accordance with the conditions of the statute creating them."). For example, the lien "shall be dissolved" unless the person claiming the lien "within ninety days after he ceases to labor on or furnish labor or materials for such building or structure, serves upon the owner . . . a just and true account of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien." S.C. Code Ann. § 29-5-90. And, if a suit to enforce the lien is not commenced within six months after the party ceases working on the structure, "the lien must be dissolved." S.C. Code Ann. § 29-5-120(A).

While an action on a mechanics' lien is typically enforced against the real property, S.C. Code Ann. § 29-5-110 outlines certain instances in which the real property may be released. Section 29-5-110 provides:

> At any time after service and filing of the statement required under § 29-5-90 *the owner* <u>or</u> *any other person having an interest in or lien upon the property* involved may secure the discharge of such property from such lien by filing in the office of clerk of court or register of deeds where such lien is filed his written undertaking, in an amount equal to one and one-third times the amount claimed in such statement, secured by the pledge of United States or State of South Carolina securities, by cash or by *a surety bond* executed by a surety company licensed to do business in this State, and upon the filing of such undertaking so secured the lien shall be discharged and the cash, securities or surety bond deposited shall take the place of the property upon which the lien existed and shall be subject to the lien. In the event of judgment for the person filing such statement in a suit brought pursuant to the provisions of this chapter, such judgment shall be paid out of the cash deposited or, in event of pledge of securities, it shall be paid from the proceeds of a sale of so much of the pledged securities as shall be necessary to satisfy such judgment or, in event of the filing of a surety bond, the surety company issuing such bond shall pay such amount found due, not to exceed the amount of the bond. Unless suit for enforcement of the lien is commenced as required by § 29-5-120, the undertaking herein required shall be null and void and the principal therein shall have the right to have it canceled and such cash or securities deposited or pledged or surety bond filed shall be released from the lien herein provided.

S.C. Code Ann. § 29-5-110 (emphasis added). "Bonding out" the property under this section allows the "owner to convey or encumber the property free and clear of the mechanics' lien." *Shelley*, 336 S.E.2d at 490.

In this case, UIG, as "any other person having an interest in" the property, obtained a surety bond, which "t[ook] the place of the property upon which the lien existed." S.C. Code Ann. § 29-5-110. Thus, the question before this court is whether UTS properly states an enforcement claim against the real property and the owner where the property was "bonded out" by "any other person" before the lawsuit was filed. For the reasons outlined herein, the court finds that the claim survives dismissal pursuant to Rule 12(b)(6).

The parties direct the court's attention to four cases, only one of which addresses the question presented in this case. Maguro relies on *Keeney's Metal Roofing, Inc. v. Palmieri*, 548 S.E.2d 900

(S.C. Ct. App. 2001) and *EFCO Corp. v. Renaissance on Charleston Harbor, LLC*, 635 S.E.2d 922 (S.C. Ct. App. 2006). According to Maguro, these cases evidence that "South Carolina law is clear that no cause of action exists after a lien is discharged by bond" and, therefore, the court must find that UTS cannot state a cause of action against Maguro for foreclosure of the mechanics' lien. [ECF No. 14 at p.4.] UTS, in response, relies on *Cohen's Drywall Co. Inc. v. Sea Spray Homes, LLC*, 648 S.E.2d 598 (S.C. 2007) and *Reed Concrete Construction, Inc. v. Millie, LLC*, No. 8:12-cv-3117, 2013 WL 80487 (D.S.C. Jan. 7, 2013). [ECF No. 21.] UTS contends that Section 29-5-110 is merely an "instructional mechanism" that directs how a judgment is executed and, therefore, the enforcement claim remains proper as against the real property and Maguro as owner. A review of the case law evidences that UTS's position is correct.

At first glance, the decision in *Palmieri* appears to support dismissal of the enforcement claim. The holding in that case, however, is limited to a narrow factual scenario that does not exist here. There, the general contractor, Cohen, subcontracted certain work to Kenney, the subcontractor. Kenney filed a mechanics' lien for certain labor and materials, claiming Cohn did not pay what was owed. In the filed lien, Kenney named the owners of the property and Cohen as the general contractor. Cohn posted a surety bond in accordance with Section 29-5-110, thereby releasing the property from the lien. Thereafter, Kenney sought to foreclose on the lien. In the foreclosure action, Kenney named the owners of the real property, Cohen, and the company issuing the bond.

Pursuant to Rule 12(b)(6), the owners of the real property moved to dismiss the enforcement claim, arguing that "[b]ecause there was no longer a lien against the property, Kenney could no longer recover" from them. *Palmieri*, 548 S.E.2d at 902. The trial court granted the motion, but refused to grant attorneys' fees. The issue on appeal was whether the owners were prevailing parties, such that they were entitled to attorneys' fees under S.C. Code Ann. § 29-5-20(A).

The South Carolina Court of Appeals held that the owners of the real property were the prevailing parties and, therefore, entitled to attorneys' fees. In reaching this conclusion, the court stated: "Kenney named [the owners] as defendants in its foreclosure action. Keeney did so *knowing* a surety bond had been purchased to discharge [the owners'] property from the lien." *Id.* at 903 (emphasis added). Because the posting of the bond released the real property and Kenney knew about the bond before the enforcement was filed, the court found that dismissal of the claim solely as to the owners of the real property was proper. *See id.* at 902 ("Appellants prevailed because, **as a matter of law**, they could not be held liable for the damages Kenney sought under any circumstance." (emphasis in original)); *see also EFCO*, 635 S.E.2d at 925 n.20[3] ("In *Kenney* the mechanic's lien could not be enforced because a bond had been executed and, under section 29-5-110, the surety bond took the place of the property upon which the lien existed.").

The facts of this case differ in one significant respect: there is no evidence that UTS was on notice of the existence of the bond when it filed its enforcement action, *i.e.*, it did not file the enforcement action "knowing a surety bond had been purchased to discharge" the property from the lien. As a result, the question becomes, does this distinction make any difference? Looking to the South Carolina Supreme Court's analysis in *Cohen's Drywall*, the court finds that it does.

However, while *Cohen's Drywall* provides additional insights, it similarly does not address the exact question before this court. There, the trial court dismissed an enforcement claim and released a bond where the lien holder timely filed the enforcement action against the real property, but then subsequently amended the pleading after the passing of the statutory six-month period to identify the bond as the subject of the action. *Cohen's Drywall*, 648 S.E.2d at 599 ("Subsequent to the

---

[3] The question in *EFCO* was whether the owner, who bonded off the property, was entitled to summary judgment and attorneys' fees where the time for enforcing the lien expired before suit was filed.

initial filing, Appellant discovered that Respondents had posted a cash bond to release the real property form the lien. Appellant then amended the averments of its complaint to identify the bond as the subject of the enforcement action. This amendment occurred after the expiration of the time limit for bringing an action to enforce the mechanics' lien."). Unlike here, the owners of the real property in *Cohen's Drywall* were also the ones who posted the bond. And, like here, but unlike *Kenney*, there was no question that the enforcement action was filed *before* the plaintiff learned of the existence of the bond.

The South Carolina Supreme Court ultimately reversed the dismissal of the claim and release of the bond, agreeing with the lien holder that "the trial court erred in interpreting the relevant statutes to require [it] to commence a separate action against the cash bond to enforce the mechanics' lien." *Id.* at 600. The court found that the "original enforcement action naming [the owners'] real property as the subject of the action is sufficient to secure foreclosure on the bond." *Id.* In reaching its conclusion, the court analyzed the mechanics' lien statutes. It found:

> [I]n order *to be properly filed*, the relevant statutes *require only that a suit for enforcement of the mechanics' lien be commenced* within six months of the last provision of services or materials for the construction of the building. Tellingly, neither statute requires a lien holder to name a substituted cash bond or other undertaking as the subject of the enforcement action. In the absence of such a requirement, we interpret § 29-5-110 as an instructional mechanism to the court directing that a judgment on a foreclosed mechanics' lien be executed against a cash bond or other secured undertaking if one has been substituted in accordance with the statutory requirements. To reach a contrary interpretation would impose a continuing record-checking obligation on the holder of the mechanics' lien that the statutes do not contemplate.

*Id.* at 600–01 (internal citations omitted; emphasis added). Thus, the South Carolina Supreme Court held that the applicable statutes "do not require [a lien holder] to bring the enforcement action against the cash bond," the amended complaint was "unnecessary," and "the trial court erred

7

in granting [the] motion to dismiss [the lien holder's] enforcement action and motion to release the cash bond." *Id.* at 601.

For the same reasons that an amendment was not necessary in *Cohen's Drywall*, this court finds that dismissal is not appropriate here. Essentially, this court finds that *Kenney* and *Cohen's Drywall* can be read in harmony. If the party seeking to enforce the mechanics' lien knows that the lien has been "bonded out," and yet still seeks an enforcement action against the property and property owners, dismissal of the owners and the grant of attorneys' fees under *Kenney* remains appropriate. To allow dismissal and the grant of attorneys' fees in favor of the owner of the real property when there is no evidence that the enforcing party knew the lien was bonded out would, however, run afoul of the South Carolina Supreme Court's holding in *Cohen's Drywall*. "[I]n order to be *properly filed*," all the relevant statues require is that UTS bring the enforcement action within the six-month period. *Cohen's Drywall*, 648 S.E.2d at 600 (emphasis added). And much like in *Cohen's Drywall*, "[t]o reach a contrary interpretation would impose a continuing record-checking obligation on the holder of the mechanics' lien that the statutes do not contemplate."[4] UTS timely brought the lien enforcement action without any knowledge of the existence of the bond and, therefore, the court is unable to find that they have not stated a claim as a matter of law.

---

[4] The court also notes that if it were to find that dismissal of Maguro is appropriate under these facts, it would be statutorily required to award attorneys' fees to Maguro, despite the fact that UTS had no knowledge of UIG "bonding out" the real property. Such a conclusion would run counter to the South Carolina Supreme Court's holding that a lien holder, such as UTS, does not have a "continuing record-checking obligation" prior to filing its enforcement action. *Cohen's Drywall*, 648 S.E.2d at 600. As noted above, in *Palmieri* the lien holder knew the real property was "bonded out" before it brought suit against the real property. Presumably, even after *Cohen's Drywall*, if a lien holder brings suit against the real property after discovering a bond, the analysis in Palmieri would remain applicable. Here, however, there is no evidence that UTS knew of the bond before filing its enforcement action. Therefore, under *Cohen's Drywall*, the claim is "properly filed," dismissal is not appropriate, and any resulting judgment will be enforced against the bond. *Id.*

8

This conclusion is consistent with the only case that is factually similar to the one at issue here—*Reed*. In *Reed*, the Honorable Henry M. Herlong, Sr. of this district was faced with the same question presented here: whether a property owner should be dismissed from a lien enforcement action pursuant to Rule 12(b)(6) where there is a surety bond discovered by the plaintiff after the filing of the action, which discharges the lien on the real property. Considering and applying *Cohen's Drywall*, Judge Herlong concluded that the plaintiff could "proceed at this stage with its enforcement action, and if any judgment is received on the foreclosed mechanics' lien, it would be executed against the surety bond" filed by the general contractor. 2013 WL 80487, at *4.

This court comes to the same conclusion. UTS filed a notice and certificate of mechanics' lien against the property and thereafter timely filed the enforcement action in accordance with the statutory requirements. Although UIG's bond discharges the mechanics' lien, South Carolina law "does not require [UTS] to bring the enforcement action against the cash [or surety] bond." *Cohen's Drywall*, 648 S.E.2d at 601. "In the event of judgment" for UTS, "such judgment shall be paid out of . . . a surety bond[.]" S.C. Code Ann. § 29-5-110. Maguro's motion to dismiss is, accordingly, denied.[5]

---

[5] The court notes that in order for Maguro to succeed on its motion to dismiss, it must establish either (1) that UTS was aware of the bond and pursued the action against the property anyway (the limited *Palmieri* scenario) or (2) that the property owner is not a proper party to a lien enforcement action, as a matter of law. While none of the cases address the second point, it appears the statutory scheme precludes such a finding. Section 29-5-110, which establishes the "bonding out" process, refers back to and requires the filing of an enforcement action as outlined in Section 29-5-120. S.C. Code Ann. § 29-5-110 ("Unless suit for enforcement of the lien is commenced as required by § 29-5-120, the undertaking herein required shall be null and void and the principal therein shall have the right to have it canceled and such cash or securities deposited or pledged or surety bond filed shall be released from the lien herein provided."). A "suit for *enforcing the lien*" under Section 29-5-120 must be "commenced . . . within six months after the person desiring to avail himself of it ceases to labor on or furnish labor or material for the building or structure." S.C. Code Ann. § 29-5-120(A) (emphasis added). To properly "commence" a "suit for enforcing the

## CONCLUSION

For the reasons outlined herein, Defendant Maguro Enterprises, LLC's Motion to Dismiss, ECF No. 14, is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

April 13, 2020
Florence, South Carolina

---

lien," the lien holder files the action with the clerk of court, like any other civil action. *See, e.g.,* S.C. Code Ann. § 29-5-140 ("[T]he date of the filing shall be deemed the commencement of the suit."); S.C. Code Ann. § 29-5-160 (outlining contents of the petition); S.C. Code Ann. § 29-5-170 (allowing multiple lien holders to join in the same action where the "labor was performed for the same owner"). And, by statute, the "owner of the building or structure" must receive notice of the action. S.C. Code Ann. § 29-5-190. Only where there is a "judgment for the person filing such statement in a suit brought pursuant to" Section 29-5-120. Therefore, a lien enforcement action is properly asserted when it names the real property as the subject of the action and identifies the owner of the subject property, thereby giving the owner notice of the proceeding. As outlined in *Cohen's Drywall*, if a judgment is thereafter obtained by the lien holder, it is paid out of the bond.